Rockingham
No. 87-380

THE STATE OF NEW HAMPSHIRE

v.

JEFFREY W. TUCKER

April 7, 1989

*Stephen E. Merrill*, attorney general (*Kathleen A. McGuire*, assistant attorney general, on the brief, and *Tina Schneider*, assistant attorney general, orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J.   The defendant was convicted following a jury trial on two counts of manslaughter stemming from the crash of an aircraft. The defendant appeals the Trial Court's (*Gray*, J.) denial of his pretrial motion to suppress statements which he made to the police while in the hospital following the accident. For the reasons that follow, we affirm.

On September 1, 1986, at approximately 11:00 a.m. a small plane crashed on Route I-95 in North Hampton killing two passengers and injuring two others, including the defendant. New Hampshire State Police Trooper Steven Hamel arrived at the scene and found the defendant lying on the pavement near the aircraft. Trooper Hamel indicated to the defendant that emergency help was on the way and encouraged him to relax. Trooper Hamel noted that the defendant had a facial laceration and was in some pain but appeared to be coherent and aware of what was going on around him. Trooper Hamel also found another individual alive and seated in what appeared to be the pilot seat of the plane.

The defendant was transported to the Portsmouth Hospital, where he was examined and received medical treatment. The defendant's blood alcohol level was approximately .15 percent at the time of his admission to the hospital.

Trooper Hamel arrived at the hospital at approximately 12:45 p.m. to check on the occupants of the plane and to investigate the accident. At that time, he did not know who had piloted the plane. Trooper Hamel first entered the room of Catherine Larivee, the other survivor of the crash, but found that she was in the midst of receiving a "great deal of medical attention," so he left. Trooper Hamel then located the defendant's room. He identified himself to the defendant and asked the defendant who had been flying the plane. The defendant replied that he had been the pilot. Trooper Hamel then read the defendant his *Miranda* rights. The defendant orally waived his rights, and Trooper Hamel proceeded to question the defendant, eliciting incriminating statements from him. During the questioning, the nurse attending to the defendant remained in the room with the two men, leaving only once for a brief period.

On September 5, four days after the accident, the defendant was released from the hospital. Four months later, the defendant was indicted for manslaughter. The defendant moved to suppress the statements that he had made to Trooper Hamel while in the hospital on September 1, 1986. The trial court denied the motion based on findings that the defendant had not been in custody, and that the defendant had knowingly and intelligently waived his *Miranda* rights. The defendant was convicted on two counts of manslaughter and sentenced by the court to consecutive sentences of from five to ten years for each count.

The defendant argues on appeal that the trial court erred in failing to suppress his statements because (1) the pre-warning statement was a product of custodial interrogation commenced prior to advising the defendant of his *Miranda* rights, and (2) the post-warning statements did not follow a valid waiver of those rights. We need not address separately the waiver issue because we conclude that the trial court properly found that the defendant was not in custody at the time of questioning. We note further that the defendant, in the context of his waiver argument, also argues that his statements were involuntary. *Cf. Mincey v. Arizona*, 437 U.S. 385, 398–402 (1978) (statements made by seriously injured and hospitalized defendant were involuntary and therefore inadmissible). However, because the defendant failed to present this issue to the trial court, we will not address it on appeal. *E.g., State v. Laliberte*, 124 N.H. 621, 621, 474 A.2d 1025, 1025 (1984); *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983).

We confine our analysis to the defendant's rights under the Federal Constitution, since he does not raise a State constitutional question. The police must inform an individual of his or her

rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to commencing custodial interrogation. Custodial interrogation includes any interrogation by the police when the individual "is taken into custody or otherwise deprived of his freedom *by the authorities* in any significant way." *Miranda v. Arizona, supra* at 478 (emphasis added). Custody has been defined as "that restriction placed on the defendant which, based on the 'totality of the circumstances,' constitutes a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *State v. Rodney Portigue*, 125 N.H. 352, 361, 481 A.2d 534, 540 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted)).

The defendant argues that where the investigation had already begun to focus on him, and he was not physically free to leave the hospital, he was effectively in custody when questioned by Trooper Hamel.

The record does not support the defendant's claim that he was the focus of the investigation. When Trooper Hamel arrived at the hospital he did not know who had piloted the plane. Indeed, he first approached the room of Catherine Larivee, who had been seated in what he had presumed was the pilot seat. Although Trooper Hamel testified that he had smelled alcohol on the defendant at the scene, and had thus wanted to question him, this fact alone could not have shifted the focus of the general investigation of the accident to an investigation of the defendant, where Trooper Hamel had no idea that the defendant had been the pilot.

Even assuming that the defendant had become the focus of suspicion after he had identified himself to Trooper Hamel as the pilot, it is well established that *"Miranda* warnings are not required simply 'because the person being questioned is one whom the police suspect.'" *State v. Rodney Portigue*, 125 N.H. at 362, 481 A.2d at 541 (quoting *California v. Beheler*, 463 U.S. at 1125 (citation omitted)).

The defendant's argument that the physical restraint imposed on him by his hospitalization in effect rendered him in custody because he was not free to leave presents a more difficult question. Other courts addressing whether such confinement equates to custody for the purposes of *Miranda* under the Federal Constitution have reached varying results, depending largely upon the particular facts of the case. *Compare Robinson v. State*, 224 So. 2d 675, 678 (Ala. Crim. App. 1969) (hospital bed interrogation custodial where defendant "being detained") *and Commonwealth v. D'Nicuola*, 448 Pa. 54, 58, 292 A.2d 333, 335–36 (1972) (deprivation of freedom of

action includes hospital confinement) *with State v. Lapp*, 202 Mont. 327, 332, 658 P.2d 400, 403 (1983) (hospital interrogation noncustodial where no coercion used to overcome suspect's freedom of choice) *and State v. Tyson*, 643 P.2d 396, 399 (Or. Ct. App. 1982) (hospital interrogation noncustodial where no evidence that police would have detained defendant had he attempted to leave).

We think the better reasoned approach is that taken by the majority of courts, that the restraint contemplated by *Miranda* is that interference with the defendant's freedom which is imposed by the police. *See, e.g., State v. Brunner*, 211 Kan. 596, 600, 507 P.2d 233, 237 (1973) (*"Miranda* clearly says that there must be some police-instigated restraint before a suspect can be regarded as being in . . . custody"); *Cummings v. State*, 27 Md. App. 361, 369–72, 341 A.2d 294, 300–02 (1975) (consensus of American case law is that questioning of a suspect who is confined in hospital but not under arrest is not custodial interrogation); *see also Wilson v. Coon*, 808 F.2d 688, 690 (8th Cir. 1987); *United States v. Martin*, 781 F.2d 671, 673 (9th Cir. 1985); *Johnson v. State*, 252 Ark. 1113, 1121, 482 S.W.2d 600, 607 (1972); *State v. Sandoval*, 452 P.2d 350, 354–55 (Idaho 1969); *State v. Zucconi*, 50 N.J. 361, 364, 235 A.2d 193, 194 (1967); *People v. Tanner*, 31 A.D.2d 148, 149–50, 295 N.Y.S.2d 709, 711 (N.Y. App. Div. 1968); *State v. Thomas*, 22 N.C. App. 206, 210–11, 206 S.E.2d 390, 392–94, *appeal dismissed*, 285 N.C. 763, 209 S.E.2d 887 (1974); *State v. Fields*, 294 N.W.2d 404, 408 (N.D. 1980). This approach is consistent with our prior case law interpreting federal law. In *State v. Rodney Portigue*, 125 N.H. 352, 481 A.2d 534, the defendant had brought his daughter to the hospital after she had been severely beaten by his wife. The defendant's other children and his wife were also at the hospital. While the defendant was in the waiting room, he was questioned by the police and gave incriminating statements which he later alleged were elicited in violation of his *Miranda* rights. We held that the defendant was not in custody, finding that "[t]he facts showing that the defendant's daughter had died, and that his remaining children were being examined at the hospital, admittedly were inducements for the defendant to remain at the hospital, but were not conditions *created by the police* to subject the defendant to continued questioning." *State v. Rodney Portigue, supra* at 362, 481 A.2d at 540 (emphasis added); *see also State v. Sheila Portigue*, 125 N.H. 338, 346, 480 A.2d 896, 901 (1984) (*"police* had not so restricted the defendant's freedom of movement . . . that she was in effect . . . in police custody") (emphasis added).

This is not to say that an individual would never be in custody when the individual's freedom of action is restrained by causes unrelated to restraint imposed by law enforcement authorities, if police restraint is also present. *Cf. State v. Lescard*, 128 N.H. 495, 496, 517 A.2d 1158, 1159 (1986) (hospitalized defendant in custody where handcuffed and attended by police officer). The record in this case, however, is devoid of evidence to support an objective reasonable belief by the defendant that, had he been physically free to leave, the police would not have heeded his request to do so. *See United States v. Masse*, 816 F.2d 805, 809 & n.5 (1st Cir. 1987) (objective reasonable standard appropriate to a determination of custody); *see also Wilson v. Coon*, 808 F.2d at 690 (detention for medical examination is not situation that reasonable person would find inherently coercive in the sense required by *Miranda*). No evidence suggests that Trooper Hamel acted in a threatening manner toward the defendant. Although Trooper Hamel remained in the room with the defendant for approximately one and one-half hours, he spoke to the defendant for "[m]aybe ten minutes." The nurse attending to the defendant testified that Trooper Hamel "asked [the defendant] a few questions and basically just sat there and did paper work." Trooper Hamel was the only police officer present, and the nurse remained in the room with Trooper Hamel and the defendant throughout most of the police officer's visit. Upon leaving the hospital, Trooper Hamel left no officer behind to monitor the defendant's activity. Moreover, Trooper Hamel testified that if the defendant's medical treatment had permitted him to leave, he would not have been arrested or in any way restrained by the authorities; and in fact, upon termination of his medical treatment, the defendant did leave the hospital unimpeded by police restraint.

Thus, upon review of the record, we hold that the trial court properly denied the defendant's motion to suppress on the ground that the defendant was not in custody at the time of questioning, and accordingly we affirm.

*Affirmed.*

All concurred.