Hillsborough-southern judicial district
No. 2006-115

THE STATE OF NEW HAMPSHIRE

v.

JONATHAN STEIMEL

Argued: January 11, 2007
Opinion Issued: April 4, 2007

142

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Wilson, Durkin & Bush, P.C.*, of Nashua (*Eric R. Wilson* and *Laura M. Dudziak* on the brief, and *Mr. Wilson* orally) for the defendant.

GALWAY, J. The State appeals the Trial Court's (*Hampsey*, J.) grant of motions to suppress evidence filed by the defendant, Jonathan Steimel. The State argues that the trial court erred in ruling that the defendant was in custody when he confessed, and that no exigent circumstances justified taking the defendant's blood without a warrant. We reverse and remand.

The following facts were either found by the trial court or appear in the record. The defendant was involved in a head-on collision around 10:00 p.m. on the Sunday before Labor Day, 2004, on Route 13 in Milford. When Officer William Bright of the Milford Police Department arrived at the scene, the defendant told him that he had fallen asleep and run into the other vehicle. The defendant explained that he had been working since 4:00 a.m. and was on his way home. Bright asked if the defendant was injured and he pointed to a cut on his knee. The defendant was taken to the hospital by ambulance where he was met by Officer Garrett Booth of the Milford Police Department.

Booth arrived at the hospital at 10:57 p.m. and found the defendant on a bed, attended by two nurses. Booth asked a nurse and the defendant for permission to speak with him; both said yes. Booth informed the defendant that he did not have to speak. When Booth asked the defendant if he was injured, the defendant again pointed to the cut on his knee. Booth later discovered that the defendant had also injured his foot. At some point during their twenty to thirty minute conversation, the defendant was placed on an IV. He remained on the hospital bed for the duration of his conversation with Booth.

After speaking with the defendant, Booth believed that he was impaired. Booth observed that he had difficulty keeping his eyes open, had droopy eyelids and extremely small pupils. The defendant's speech was slurred and at times it appeared that he had no idea what he was saying. When Booth asked the defendant if he normally slurred his speech, he replied that he did not realize that he was doing so.

Booth, a certified drug recognition expert, believed that the defendant was being affected by a narcotic analgesic. Booth explained that he believed the defendant was impaired and was exhibiting characteristics associated with heroin use. The defendant denied taking any drugs. Booth again told the defendant that his observations were consistent with different types of drug use and that he found it hard to believe the defendant had not taken any controlled drugs that night. He emphasized that it was obvious to him that the defendant was impaired. The defendant then told Booth that he had taken two Percocets earlier in the evening.

The defendant was arrested for aggravated driving while intoxicated. See RSA 265:82-a (2004) (current version at RSA 265-A:3 (Supp. 2006)). After his arrest, the defendant was given an Administrative License Suspension form, informed of his rights and a blood sample was taken.

Prior to trial, the defendant moved to suppress his statements to Booth and evidence related to his blood samples. The trial court ruled that when Booth spoke with the defendant in the hospital, he was subjected to custodial interrogation and not informed of his *Miranda* rights. Because

the defendant was subjected to custodial interrogation without the benefit of *Miranda*, the trial court found that it was unnecessary to determine whether his statements were voluntary. Lastly, the trial court found that seizing the defendant's blood without a warrant was unjustified under the circumstances. Accordingly, the trial court granted the defendant's motions to suppress. On appeal, we will accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. *State v. Johnston*, 150 N.H. 448, 451 (2004). Our review of the trial court's legal conclusions, however, is *de novo. Id.*

## I. Motion to Suppress Statements

The State contends that the defendant was not in custody during his conversation with Booth and that his statements were voluntary. Therefore, the State argues, the trial court erred.

### A. Custody

*Miranda* warnings are required when a defendant undergoes custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The trial court found, and the State does not dispute, that the defendant was interrogated. Thus, we need only determine whether the defendant was in custody during that interrogation. We first consider the arguments under the State Constitution, using federal cases only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 233 (1983).

Although we will not overturn the factual findings of the trial court unless they are contrary to the manifest weight of the evidence, we review the ultimate determination of custody *de novo. State v. Locke*, 149 N.H. 1, 6 (2002). Custody entitling a person to *Miranda* protections during interrogation requires formal arrest or restraint on freedom of movement to the degree associated with formal arrest. *State v. Carpentier*, 132 N.H. 123, 126 (1989). The restraint on freedom of movement must be imposed by the police to constitute custody. *State v. Tucker*, 131 N.H. 526, 530 (1989). In the absence of formal arrest, the trial court must determine whether a suspect's freedom of movement was sufficiently curtailed by considering how a reasonable person in the suspect's position would have understood the situation. *Carpentier*, 132 N.H. at 126-27. In reaching its decision, the trial court should consider, among other factors, the suspect's familiarity with the surroundings, the number of officers present, the degree to which the suspect was physically restrained and the interview's duration and character. *Id.* at 127.

In *Tucker*, we were confronted with a factual situation much like the one before us here. In that case, a state trooper investigating the crash

of a small plane entered the hospital room of an injured suspect, the defendant, and asked him who was piloting the plane. *Tucker*, 131 N.H. at 528. The defendant gave a self-incriminating answer, and the trooper then advised him of his *Miranda* rights. *Id.* On appeal, the defendant argued that "the physical restraint imposed on him by his hospitalization in effect rendered him in custody because he was not free to leave." *Id.* at 529. We determined that other jurisdictions addressing whether such confinement equates to custody for the purposes of *Miranda* had reached varying results, dependent largely upon the particular facts of each case. *Id.* We then held that "the better reasoned approach is that taken by the majority of courts, that the restraint contemplated by *Miranda* is that interference with the defendant's freedom which is imposed *by the police*." *Id.* at 530 (emphasis added). This approach is entirely consistent with *Miranda*, which set out to eradicate the practice of police officers imposing custody upon suspects to coerce confessions from them. *Miranda*, 384 U.S. at 445-58. Where, as here, any restraint upon the defendant was imposed solely by medical personnel, and the police did not take advantage of the defendant in this situation, and the record "is devoid of evidence to support an objective[ly] reasonable belief by the defendant that, had he been physically free to leave, the police would not have heeded his request to so do," *Tucker*, 131 N.H. at 531, the defendant was not in custody for *Miranda* purposes and the trial court erred by ruling to the contrary.

The trial court found that "the defendant was in custody at the time that Booth explained to the defendant that he believed that, based upon his observations, the defendant was impaired." According to the trial court, it was relevant that Booth testified that there was a chance that the defendant may not have felt free to leave. Also, the trial court found it relevant that Booth did not inform the defendant that he was free to leave and that the defendant remained on the hospital bed for the duration of the interrogation. We disagree with the trial court's custody determination.

Prior to speaking with the defendant, Booth asked for permission to speak with him. Booth also informed the defendant that he did not have to speak. There was only one officer present and the entire conversation lasted only twenty to thirty minutes, during which the defendant was never physically restrained.

The defendant argues that he was in custody because he was unable to leave the hospital during the interrogation. Assuming that the defendant could not leave the hospital, it was because hospital staff had required him to undergo certain tests, not because of any acts or statements by Booth. As noted, interference with the defendant's freedom of movement must be imposed by the police to create custody. *Tucker*, 131 N.H. at 530; *cf. State*

146

*v. Lescard*, 128 N.H. 495, 496 (1986) (defendant in custody in hospital because he was handcuffed while being questioned).

■ The trial court found that the conversation was transformed into a custodial interrogation when Booth confronted the defendant with his suspicions. We agree that this is a relevant factor, but note that the confrontation occurred near the end of an otherwise general and casual conversation. We have previously held that confrontational questioning did not constitute custody where it occurred briefly during an otherwise casual conversation. *See Carpentier*, 132 N.H. at 127.

■ Finally, the defendant contends that Booth's subjective belief that the defendant was in custody is relevant to the custody determination. Booth's subjective beliefs, however, are not determinative of the issue. *State v. Riley*, 126 N.H. 257, 263 (1985). Custody is an objective test focused upon how a reasonable person in the suspect's position would have understood the situation. *State v. Baroudi*, 137 N.H. 62, 65 (1993). Here, Booth asked the defendant's permission to speak to him and informed the defendant that he did not have to speak. Additionally, the record demonstrates that to the extent there was any physical restraint on the defendant's movement, it was as a result of the actions of hospital staff and not because of any acts or statements by police. Finally, the conversation between Booth and the defendant was mostly general and casual. After considering the totality of the circumstances, accepting the trial court's findings of fact, we conclude that the defendant was not in custody during his conversation with Booth. *See Locke*, 149 N.H. at 6 (ultimate determination of custody reviewed *de novo*). Because the defendant was not in custody during his conversation with Booth, the trial court erred in granting the defendant's motion to suppress on that ground.

The Federal Constitution offers the defendant no greater protection than does the State Constitution with regard to the defendant's rights under *Miranda*. *State v. Turmel*, 150 N.H. 377, 385 (2003). Accordingly we reach the same result under the Federal Constitution as we do under the State Constitution.

### B. Voluntariness

Because of its ruling on the custody issue, the trial court specifically declined to rule on the issue of whether the defendant's statements to the police were voluntary. Although the trial court has indicated that it was inclined to find a lack of voluntariness, we find little support for this in the record. A determination of voluntariness is initially a question of fact for the trial court, whose decision will not be overturned unless it is contrary to the manifest weight of the evidence. *State v. Fleetwood*, 149 N.H. 396,

402 (2003). Here, because the trial court did not rule on the issue, and because resolving the issue may require additional factual findings, we decline to address it. *See N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 619 (2004).

*II. Motion to Suppress Results of Blood Test*

The State next contends that the trial court erred in suppressing the evidence of the defendant's blood test results. As noted above, when reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review the trial court's legal conclusions *de novo*. *Johnston*, 150 N.H. at 451. We confine our analysis to the State Constitution because neither party makes a federal constitutional claim. *State v. Stern*, 150 N.H. 705, 708 (2004). We rely upon federal cases only to aid in our analysis. *Id.*

Withdrawing blood without a warrant and without consent is a search and seizure under the Fourth Amendment of the United States Constitution and under Part I, Article 19 of the New Hampshire Constitution. *Schmerber v. California*, 384 U.S. 757, 768 (1966); *Stern*, 150 N.H. at 708-09. Warrantless searches are prohibited unless they fall within the narrow confines of a judicially crafted exception. *See Stern*, 150 N.H. at 708. The State bears the burden of proving by a preponderance of the evidence that a search falls within one of these exceptions. *Id.* Here, the State contends that the warrantless search was justified by exigent circumstances.

Exigent circumstances "refer to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search, or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." *State v. Graca*, 142 N.H. 670, 673 (1998) (quotation omitted). Whether exigent circumstances exist is judged by the totality of the circumstances and is largely a question of fact for the trial court, which we will not disturb unless clearly erroneous. *Stern*, 150 N.H. at 709.

The exigent circumstances exception is satisfied when: (1) the police have probable cause; and (2) the delay caused by obtaining a search warrant would create a substantial threat of imminent danger to life or public safety or likelihood that evidence will be destroyed. *Stern*, 150 N.H. at 708-09. The trial court found, and the parties do not dispute, that probable cause existed for seizing the defendant's blood. Thus, we only

address whether the delay caused by obtaining a search warrant would create a likelihood that the evidence would have been destroyed.

We address first the defendant's contention that the issue has not been preserved. The defendant argues that the State is barred from arguing exigent circumstances because the State failed to present evidence of exigent circumstances during the hearing. Specifically, the defendant argues that the State failed to present evidence that drugs metabolize such that a delay in seizing the defendant's blood would likely have resulted in the destruction of evidence. The metabolization of drugs, however, was addressed in the trial court's order and in the State's motion for reconsideration. Therefore, because the evidentiary foundation for the issue is in the record and the trial court had an opportunity to correct any error, the matter has been preserved for appeal. *State v. Tselios*, 134 N.H. 405, 407 (1991).

The trial court found that the State failed to prove exigent circumstances because it did not present evidence that the levels of the drug in the defendant's blood would dissipate so rapidly that Booth could not have obtained a warrant. Also, the trial court found it relevant that Booth did not attempt to locate a magistrate given the late hour.

As to the first issue, we have previously noted that alcohol is metabolized in the body and any significant delay in taking a breathalyzer test may deprive the State of an accurate indication of the driver's condition and could result in the loss of evidence. *State v. Schneider*, 124 N.H. 242, 245 (1983). We see no reason to reach a different conclusion with regard to controlled drugs. "Making a distinction between the ingestion of alcohol and that of drugs is a needless refinement and distinction." *People v. Ritchie*, 181 Cal. Rptr. 773, 775 (Ct. App. 1982). Although some drugs may be detectable for long enough that police can obtain a warrant, police officers cannot know with certainty which drugs are affecting suspects, and even if a suspect discloses that he took a particular drug, he may be lying. *See, e.g., United States v. Edmo*, 140 F.3d 1289, 1291 (9th Cir. 1998) (defendant told officers he consumed methamphetamine and cocaine but urine test revealed only the presence of marijuana).

A clear majority of jurisdictions that have addressed the issue make no distinction between the metabolization of alcohol and controlled drugs. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 623 (1989); *Edmo*, 140 F.3d at 1292; *State v. Strong*, 493 N.W.2d 834, 837 (Iowa 1992); *Holloman v. State*, 820 So. 2d 52, 55 (Miss. Ct. App. 2002); *State v. Hanson*, 588 N.W.2d 885, 893 (S.D. 1999); *Ritchie*, 181 Cal. Rptr. at 775. Today, we join that majority.

■ As for the trial court's second concern, it noted that although obtaining a search warrant at night creates delay, Booth should have attempted to locate a magistrate. When an officer is trying to obtain a blood sample at night and the evidence is time sensitive, however, locating a magistrate risks destruction of the evidence. *State v. Wong*, 125 N.H. 610, 630 (1984). Moreover, it is common knowledge that a warrant is considerably more difficult to obtain at night than during working hours. *Id.* Here, this difficulty was even more pronounced because it was late at night on a holiday weekend.

After reviewing the totality of the circumstances, we conclude that the trial court's finding of no exigent circumstances was unsupported by the evidence.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.