NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MARKLEY ALLEN FOSTER, *Appellant*.

No. 1 CA-CR 16-0338
FILED 5-18-2017

Appeal from the Superior Court in Yuma County
No. S1400CR201400733
The Honorable David M. Haws, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Zachary John Dumyahn
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Kenton D. Jones joined.

---

**K E S S L E R**, Judge:

**¶1**        Markley Allen Foster appeals his convictions and sentences for two counts of second degree murder, one count of criminal damage, one count of possession of marijuana, and one count of possession of drug paraphernalia. He also challenges the restitution order related to the criminal damage charge. For the reasons stated below, we affirm his convictions and sentences but modify the restitution order.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        In May 2014, Foster's vehicle collided with another after Foster ran a red light.  The two people in the other car did not survive the collision. Emergency personnel removed Foster from his vehicle and took him to a Yuma hospital for treatment. Two law enforcement officers, Captain GA and Trooper MC, questioned Foster for under an hour in the Yuma hospital emergency room. During the conversation, Foster admitted ingesting Ambien and smoking marijuana the previous night and running a red light just before the collision.  Two days after the collision, police obtained a search warrant for Foster's home where they found two used glass pipes containing marijuana residue and a small bag of marijuana.

**¶3**        The State indicted Foster for two counts of second degree murder, a class one felony; one count of criminal damage, a class four felony; one count of possession of marijuana, a class six felony; and one count of possession of drug paraphernalia, a class six felony. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-1104(A)(3) (2009) (second degree murder); 13-1602(A)(1) (2015) (criminal damage); 13-3405(A)(1) (2010) (possession of marijuana); 13-3415(A) (2017) (possession of drug paraphernalia).[1]

**¶4**        Before trial, Foster moved to suppress statements he made to police in the emergency room.  Foster argued the statements were

---

[1]        We cite the current version of statutes unless changes material to this decision have since occurred.

involuntary and taken in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Sections 4, 8, 10, and 32 of the Arizona Constitution, as well as *Miranda v. Arizona*, 384 U.S. 436 (1966). After a suppression hearing, the court declined to suppress Foster's statements, finding that Foster was not in custody for *Miranda* purposes and spoke voluntarily.

¶5 Foster also moved to preclude introduction of photographs depicting the deceased victims, arguing the photographs were gruesome in nature and so inflammatory as to prejudice him. He offered to stipulate to the victims' cause of death, but the State asserted the photographs were necessary to show the impact injuries, establish the victims' identities, demonstrate the role of the medical examiner, and illustrate the accident reconstructionist's testimony. The court proposed that the State show the photographs to the court and Foster before showing them to the jury, reasoning Foster could "make a record as to particular photographs" and the court could consider whether the photographs were too gruesome at that time. The parties agreed, and the court separately considered each photograph as it was presented. Despite Foster's objections, the court allowed admission of six of the seven offered photographs, finding they were not gruesome and that their probative value was not outweighed by the danger of unfair prejudice.

¶6 Following a nine-day trial, the jury convicted Foster of all counts. After denying Foster's motion for a new trial, the superior court imposed presumptive, concurrent terms on all counts, crediting Foster 705 days of presentence incarceration. In total, the court sentenced Foster to sixteen years' imprisonment on Counts 1 and 2, 2.5 years for Count 3; and a year on Counts 4 and 5. It also ordered Foster to pay $5155 in restitution to the victims' daughter and $6,850.23 in restitution to the Arizona Department of Transportation ("ADOT") based on damage caused to state property in the accident.

¶7 Foster timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21 (2017) and 13-4033(A)(1) (2017).

**DISCUSSION**

¶8 Foster raises three issues on appeal. He asserts the superior court erred by: (1) admitting his statements to the police; (2) admitting photographs of the victims when neither their identity nor cause of death was at issue; and (3) ordering Foster to pay too much in restitution to ADOT.

¶9        The State concedes we should reduce the restitution award to $4,394.23 because ADOT received partial compensation from Foster's insurance carrier in the amount of $2456. We therefore reduce the superior court's restitution award to the State to $4,394.23 and address Foster's remaining arguments.

I.        Admission of Thornton's Statements

¶10        We review the superior court's denial of a motion to suppress evidence for an abuse of discretion. *State v. Waller*, 235 Ariz. 479, 483, ¶ 5 (App. 2014) (citation omitted). We look only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016) (citations omitted). We defer to the court's determination of facts and witness credibility but review its legal conclusions de novo. *Waller*, 235 Ariz. at 483, ¶ 5 (citation omitted).

¶11        Foster argues the superior court erred by admitting his statements to the police in Yuma about running a red light, street racing, and use of Ambien and marijuana.[2] He argues the court erred in admitting the statements because he was in custody but not read his *Miranda*

---

[2]        Foster also challenges statements he made to the police in an interview at a Phoenix hospital. However, we only address the statements from the Yuma interview because Foster and not the State elicited testimony and introduced evidence regarding the Phoenix interview. Foster's introduction of the Phoenix interview either amounts to invited error or moots the issue of whether its admission was erroneous. *See State v. Pandeli*, 215 Ariz. 514, 528, ¶ 50 (2007) (citation and quotation omitted) (stating "a defendant who invited error at trial may not then assign the same as error on appeal"); *State v. Hoskins*, 199 Ariz. 127, 136-37, ¶ 24 (2000) (citation omitted) ("Even assuming a *Miranda* violation, non-reference to the statements at trial renders defendant's *Miranda* objections moot."). In any event, even if the State had introduced the statements Foster made in Phoenix and such admission was error, the statements were merely cumulative of the statements he made in the Yuma hospital. Because we hold the Yuma hospital statements were admissible, any error in admitting the Phoenix statements would be harmless error. *State v. Granados*, 235 Ariz. 321, 329, ¶ 35 (App. 2014) (citing *State v. Williams*, 133 Ariz. 220, 226 (1982)) (stating introduction of cumulative evidence is "at most harmless error").

warnings before he made the statements. He also argues the statements were involuntary.

### A. Custody

**¶12** Foster argues he was in custody for *Miranda* purposes because he was not free to leave and was incapable of avoiding the officers or escaping their interrogation.[3] We disagree.

**¶13** To protect the Fifth Amendment privilege against compulsory self-incrimination, police officers must provide *Miranda* warnings before interrogating a person in custody. *Maciel*, 240 Ariz. at 49, ¶ 10 (citing *Miranda*, 384 U.S. at 478-79). Whether a person is in "custody" for *Miranda* purposes depends on whether there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at ¶ 11 (citations and quotations omitted). "Custody" requires "not only curtailment of an individual's freedom of action, but also an environment that presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at ¶ 12 (citations and quotations omitted).

**¶14** We consider three factors when determining whether a person is in custody for *Miranda* purposes: "the site of the questioning, the presence of objective indicia of arrest, and the length and form of the interrogation." *Id.* at ¶ 11 (citations omitted). An individual is not typically found to be in custody when held for medical treatment at a hospital. *See United States v. Martin*, 781 F.2d 671, 673 (9th Cir. 1985); *see also State v. Tucker*, 557 A.2d 270, 272 (N.H. 1989) (collecting cases holding that

---

[3] Foster also asserts *Miranda* warnings were necessary because it was "plain from the circumstances that investigative attention has focused on [him] as the perpetrator of the offense." However, the United States Supreme Court has rejected this "focus"-based approach, emphasizing that it is "the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the court to impose the *Miranda* requirements with regard to custodial questioning." *Beckwith v. United States*, 425 U.S. 341, 346-47 (1976) (citation and quotation omitted); *see State v. Barnes*, 124 Ariz. 586, 589 (1980) (citation and quotation omitted) (stating *Miranda* warnings are not required simply "because the questioned person is one whom the police suspect"). Additionally, Foster's cited cases, *State v. Pettit*, 194 Ariz. 192 (App. 1998) and *State v. Tellez*, 6 Ariz. App. 251 (1971), are inapplicable to this case because they address *Miranda* in the context of a traffic stop.

questioning of a suspect who is confined in hospital but not under arrest is not custodial interrogation). However, law enforcement restraint amounting to custody can result if "the police took a criminal suspect to the hospital from the scene of a crime, monitored the patient's stay, stationed themselves outside the door, arranged an extended treatment schedule with the doctors, or some combination of these." *Martin*, 781 F.2d at 673.

¶15 We conclude Foster was not in custody when he gave the statements in the Yuma hospital. Although "the unfamiliar surroundings and emotionally charged atmosphere [of a hospital emergency room] might have been capable of exerting some coercive influence," none of the other coercive elements were present when the police questioned Foster. *See State v. Riffle*, 131 Ariz. 65, 68 (App. 1981) (citation omitted) (stating hospital setting, taken alone, does not require the giving of *Miranda* warnings). Police did not take Foster to the hospital from the scene of the crime, monitor Foster's stay, station themselves outside his door, or arrange an extended treatment schedule with his doctors. *See Martin*, 781 F.2d at 673. None of the usual indicia of arrest, such as handcuffs, locked doors, drawn guns, or a search of Foster or Foster's person were present. *See Riffle*, 131 Ariz. at 68 (listing typical indicia of arrest). The record is unclear as to whether Foster was restrained, but the police denied restraining or handcuffing Foster. Construing the evidence in the light most favorable to affirming, Foster was not even restrained by hospital staff but simply had difficulty getting up because of the nature and extent of his injuries. Additionally, the circumstances were clearly not so restrictive as to cause "a reasonable person [to feel] he or she was not at liberty to terminate the interrogation and leave" because Foster "tried several times" to get up and leave during the interview but was prevented from doing so because of his injuries. *Howes v. Fields*, 565 U.S. 499, 509 (2012) (discussing the freedom-of-movement inquiry used to determine whether a defendant is in custody). Finally, the questioning lasted for less than an hour. *See State v. Cruz-Mata*, 138 Ariz. 370, 373 (1983) (finding defendant was not in custody during ninety-minute interview). Based on these circumstances, we conclude the court did not err in finding Foster was not in custody when he made the statements.

        B.     Voluntariness

¶16 Foster argues his statements to police were involuntary because he made them two hours after the collision while receiving treatment in intensive care, experiencing tremendous pain, under the influence of a narcotic for pain, and incoherent. We disagree.

¶17　　　Use of a defendant's involuntary statements against him in a criminal trial is a denial of due process of law, "even though there is ample evidence aside from the confession to support the conviction." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (citations and quotation omitted). A statement is involuntary if it is not "the product of a rational intellect and a free will." *Id.* (emphasis omitted) (citation and quotation omitted). A "defendant can voluntarily waive his *Miranda* rights even when he is in the hospital, on medication, and in pain." *United States v. George*, 987 F.2d 1428, 1431 (9th Cir. 1993) (holding statements voluntary when defendant was in critical condition but not unconscious or comatose and gave coherent responsive answers); *see also Martin*, 781 F.2d at 673-74 (holding statements voluntary even though defendant was under the influence of Demerol, a painkiller, and still in pain).

¶18　　　Foster cites *Mincey v. Arizona*, 437 U.S. 385 (1978), in which the defendant "had been seriously wounded just a few hours earlier, and had arrived at the hospital depressed almost to the point of coma," for support. 437 U.S. at 398. In that case, the defendant was in the intensive care unit; complaining that his pain was "unbearable"; "evidently confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation"; and "lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus" while being interrogated. *Id.* at 399. He received various drugs before being interviewed, was unable to speak because he was intubated and accordingly only able to communicate with police in writing, and "clearly expressed his wish not to be interrogated." *Id.* at 396, 399. The Court found it "hard to imagine a situation less conducive of the exercise of 'a rational intellect and free will'" than the defendant's and determined the statements were involuntary. *Id.*

¶19　　　The record here is distinguishable from *Mincey*. We recognize that police questioned Foster while he was in the emergency room, "writhing in pain," hooked up to a vitals monitor, and medicated with a pain narcotic like Mincey. However, Foster was not intubated and was able to speak freely, and he did not ask the officers to stop questioning him or to speak with an attorney. Captain GA testified Foster was "very open" and "willing to discuss things" with the officers regarding his recollection of events. Additionally, the questioning was of a much shorter duration and lesser intensity than Mincey's; Mincey's questioning was a four-hour ordeal during which the officer "ceased the interrogation only during intervals when Mincey lost consciousness or received medical treatment," whereas Foster's interview finished in under an hour. *Id.* at 400-01. Finally, although Captain GA opined Foster "was confused as to where he was going and

some of the statements he was making" during the interview, he stated that it was not uncommon for a person to be confused after a traffic collision and that Foster's responses were otherwise "solid" and "very, very detailed." In light of these facts, we conclude the court did not err in finding Foster's statements voluntary.

II.      Admission of the Victims' Photographs

**¶20**      Foster challenges the admission of only two of the six admitted photographs. He argues the court erred in admitting the photographs of the victims when neither the victims' identity nor cause of death was at issue, violating the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, Section 4, of the Arizona Constitution. Foster concedes the photographs were relevant, but he asserts they were unnecessarily gruesome and did not contribute to proof of the crimes he allegedly committed.

**¶21**      "Relevant photographs may be received in evidence even though they also have a tendency to prejudice the jury against the person who committed the offense." *State v. Bocharski*, 200 Ariz. 50, 55, ¶ 21 (2001) (citation and quotation omitted). Once the court determines a challenged photograph is relevant, it must determine whether it has "a tendency to inflame or incite passion in the jurors." *State v. Doerr*, 193 Ariz. 56, 64, ¶ 29 (1998) (citation omitted).  If the court finds the photograph has this effect, it must balance the probative value of the image with its prejudicial effect. *Id.* (citation omitted); Ariz. R. Evid. ("Rule") 403.  Trial courts have broad discretion in admitting photographs, and we will not disturb a trial court's decision to admit photographs into evidence absent an abuse of discretion. *Bocharski*, 200 Ariz. at 55-56, ¶¶ 21, 27 (citations omitted).

**¶22**      We conclude the superior court did not err in admitting the photographs. The State asserted the photographs were necessary, in part, to "demonstrate the context and nature of the collision scene, the resting place of the vehicles to demonstrate that [Foster]'s vehicle was the cause of the collision, the nature of the injuries to the victims, [and] to establish the death of the victims and that they were in their vehicle." The court conducted a Rule 403 weighing test and found that the photographs were not gruesome and were relevant to show the position of the decedents in the vehicle, the extensive damage to the vehicle, and the force of the collision.  The record demonstrates the photographs were used for these purposes during direct examination of one of the officers who arrived on the scene of the collision. Objectively, the photographs, which showed no gaping wounds, fractures, or any significant injuries, were no more

gruesome than other photographs that our Supreme Court has found admissible. *See, e.g.*, *id.* at 55-57, ¶¶ 20-29 (finding no abuse of discretion in admitting photographs showing "views of the victim's skull, the top and its contents having been removed, with a metal rod going through an opening to the inside"). "There is nothing sanitary about murder, and there is nothing in Rule 403 . . . that requires a trial judge to make it so." *State v. Rienhardt*, 190 Ariz. 579, 584 (1997). We find no abuse of discretion.

## CONCLUSION

**¶23** For the reasons stated, we affirm Foster's convictions and sentences but reduce the restitution award to the State to $4,394.23.



AMY M. WOOD • Clerk of the Court
FILED:  AA