Hillsborough-southern judicial district
No. 92-753

KEVIN WEBSTER

v.

RONALD L. POWELL, COMMISSIONER

December 15, 1993

*Jeffrey R. Howard,* attorney general (*John A. Curran,* assistant attorney general, on the brief and orally), for the State.

*Judith M. Kasper,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The petitioner, Kevin Webster, appeals from the Superior Court's (*Groff,* J.) denial of his petition for a writ of habeas corpus challenging his incarceration for a violation of probation. We reverse.

On January 8, 1988, the petitioner was sentenced contemporaneously on two indictments. On indictment 86–1105, charging sale of cocaine (the drug indictment), he was sentenced to twelve months at the house of correction followed by two years probation. On indictment 87–427, charging second-degree assault (the assault indictment), the petitioner received a sentence of one to three years at the State prison, consecutive to the sentence on the drug charge, suspended, and subject to imposition for a period of three years.

In April 1990, a violation of probation report was filed against the petitioner relative to the drug indictment. A four-paragraph handwritten agreement to resolve the probation violation was executed

by the State and the petitioner and approved by the Superior Court (*Hampsey*, J.) in July 1990. The agreement was captioned with the docket numbers for both the assault indictment, 87–427, and the drug indictment, 86–1105, and contained the following paragraphs:

"3. Defendant agrees to serve 12 months in the Hillsborough House of Correction on docket number 87–427. Defendant waives his right to good time credit;

4. Defendant agrees to serve an additional 2 years on probation from this day forward."

Subsequent reports of probation violations were filed against the petitioner in June and July 1992, each containing both the drug and assault indictments' docket numbers. At the August 1992 hearing on the alleged violations, after the Superior Court (*Mangones*, J.) found the petitioner chargeable, the prosecutor made a sentencing recommendation:

"Your honor, the State's recommendation is that on Docket No. 87–427, charging the defendant with second-degree assault, which carries a maximum 3-½ to 7 years, that he be resentenced to be stand committed in the New Hampshire State Prison for the 2-½ to 5 and receive pretrial confinement credit of 365 days."

The court asked for clarification of the docket number, which had been amended under the court's new numbering system, and the prosecutor replied, "That charges him with second-degree assault." The prosecutor also clarified that, on the assault charge, the petitioner had already served twelve months in the house of correction. The court accepted the recommendation and sentenced the petitioner accordingly.

The petitioner filed for a writ of habeas corpus challenging the legality of his sentence, arguing that the sentencing jurisdiction of the court relative to the assault indictment, 87–427, had expired in January 1991, prior to the probation violations for which he was sentenced. The trial court agreed that "[t]he three-year period, within which the suspended sentence in 87–427 could be imposed, had expired as of January 8, 1991," and that any attempt to impose a sentence on the assault indictment would have been unlawful. The court ultimately found that notwithstanding the record references to the assault indictment, the petitioner's 1992 sentence was in actuality imposed on the drug indictment, over which jurisdiction remained. That conclusion was based on two subsidiary findings.

First, the trial court looked to the July 1990 agreement that had resulted in sentencing on the petitioner's earlier violation. While not-

ing that paragraph three of the agreement expressly provided for imposition of twelve-months imprisonment on indictment 87–427, the court found this reference to the assault indictment to be a "scrivener's error." That sentence, the court found, was in fact imposed on the drug indictment. Second, with respect to the 1992 hearing and resultant sentencing, the court found that "[t]he transcript indicates that both the Court and the prosecutor were mistaken as to the indictment under which the probation had actually been imposed. The fact that the Court mistakenly identified the docket number as 87–427 is of no significance." Thus, the court found, the 1992 sentence was in fact imposed on the drug indictment.

While we ordinarily defer to the trial court's findings of fact unless they are clearly erroneous, we are not so bound where the trial court has relied solely on documentary and record evidence that we are equally capable of examining. *See Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330, 605 A.2d 1026, 1029 (1992). Here, as no testimony was adduced at the habeas hearing, the trial court was in no better position than are we to determine the meaning and significance of document entries and transcript colloquies. *See id.*

Our review of the 1990 sentencing agreement leads us to conclude that there is no basis for assuming that its reference to the assault indictment resulted from a "scrivener's error." The caption of the agreement plainly lists both docket numbers, indicating that the agreement was intended to embrace both the assault and drug indictments, sentencing jurisdiction at that time remaining over both. The express reference in paragraph three to 87–427 indicates on its face that the term of imprisonment to be imposed was tied to the assault indictment. Moreover, upon close inspection of the copy of the agreement provided to us, it appears that paragraph three's handwritten docket number, "87–427," was written over another number. The "87" appears to have originally been "86." The drug indictment was number 86–1105. Rather than a scrivener's error, therefore, the assault indictment number was apparently written in a deliberate, corrective fashion. Nothing on the face of the agreement suggests anything other than what it purports to be; namely, the disposition of both indictments.

The dissent ascribes the inclusion of the assault indictment number in the 1990 agreement to "docket number confusion," referring to it as "the erroneous docket number used in the agreement." While we might agree with these characterizations were the assault indictment the *only* number to appear, there is no reason to suppose that

its inclusion along with the drug indictment was either erroneous or the product of confusion. The parties by executing the agreement and the court by accepting it apparently intended for the petitioner to submit to the court's jurisdiction over both indictments.

The transcript of the 1992 probation violation hearing similarly betrays no ambiguity with respect to the intentions of the parties and the court. At that time, the petitioner was expressly sentenced on the assault indictment, jurisdiction over which had by then expired. That the prosecutor and judge may have been mistaken about which indictment remained before the court does not negate what the judge in fact did: he sentenced the petitioner on an indictment over which the court lacked jurisdiction.

By concluding that the petitioner should stay in prison "[i]n light of the overwhelming, undisputed evidence that [he] twice violated the terms of his probation on the drug charge," the dissent essentially implies that guilt in fact is sufficient to overcome serious procedural defects. To our knowledge, this has never been the law.

■■ Defendants in criminal cases have the right to expect that sentencing orders will clearly communicate the exact nature of their sentences. *State v. Huot*, 136 N.H. 96, 99, 612 A.2d 362, 364 (1992). Where there is no ambiguity, the intent expressed in the sentencing order must be presumed to reflect the intent of the sentencing judge. *See id.* at 99–100, 612 A.2d at 364. Here, the sentencing order plainly expressed an intent to impose a sentence on an indictment over which there was no sentencing authority. The dissent concludes that the reference to the assault indictment was "inadvertent" and that the assault docket number was "erroneously scribbled." We rely, however, on the express language used by the parties and the sentencing court, and on the spirit of our prior sentencing cases. To hold, as the trial court in effect did, that the sentencing court *could have* legally sentenced the petitioner on an indictment that remained cannot render an otherwise illegal sentence lawful. Jurisdiction over the assault indictment was lacking, and as the petitioner is thus incarcerated on an illegal sentence, his petition for habeas corpus relief must be granted.

*Reversed.*

THAYER, J., dissented; the others concurred.

THAYER, J., dissenting: I would affirm the trial court's denial of the petitioner's request for a writ of habeas corpus, but would remand the matter for resentencing. Although I agree with the major-

ity that we should not reflexively defer to a trial court's findings of fact when those findings are based solely on documentary and record evidence, I cannot accept the majority's examination of the evidence in this case.

As an initial matter, the majority's survey of the relevant facts overlooks two crucial, interconnected items. First, as the petitioner concedes in his brief, the initial violation of probation, filed on April 25, 1990, related specifically to the drug charge only. Next, although the July 30, 1990, agreement disposing of that violation contained both the drug and the assault indictment numbers, the defendant specifically pled "true" only "to the probation violation filed April 25th, 1990." It is not difficult, then, to deduce that when the defendant agreed that he had violated his first probation, he understood that his plea related exclusively to the sentence of probation imposed on the drug charge, not to that imposed on the assault charge.

In addition, a chronological analysis of the sentences imposed on the defendant shows that, in spite of the docket number confusion, the various sentences themselves could only have derived from the drug charge. On January 8, 1988, the defendant pled guilty to both the assault charge and the drug charge. Although the defendant was sentenced to one to three years in prison on the assault charge, this sentence was subject to imposition for three years, during which time the defendant was to serve a twelve-month jail sentence and two years probation on the drug charge. On April 25, 1990, the defendant was charged with violating his probation on the drug charge. This violation was resolved by the July 30, 1990, agreement, referred to above, in which the defendant pled "true" to violating the sentence of probation imposed on the drug charge. Under this agreement, the defendant was sentenced to an additional twelve months in the house of correction plus two additional years of probation. In spite of the erroneous docket number used in this agreement, all parties agree that the July 30, 1990, sentencing could only have derived from a violation of the sentence imposed on the drug charge.

After his second release from incarceration, the defendant violated the terms of his second two-year probation. The defendant again admitted, this time in August 1992, that he had committed a series of rules infractions, including positive results on drug screenings. At that time, there was no confusion regarding the specific terms of the original sentencing order that the defendant was charged with violating. The only confusion in the court pertained to whether the probation violation stemmed from the assault or the drug charge. This confusion only had an impact upon the determina-

tion of an appropriate sentence following the 1992 probation violation; there was absolutely no dispute that the defendant had once again violated the terms of his second probation.

We have held that until a defendant's term of probation is completed, the defendant "is still within the reach of the *sentencing* arm of the court." *State v. White*, 131 N.H. 555, 559–60, 556 A.2d 308, 311 (1989) (emphasis added). During a probationary period, the trial court "retain[s] jurisdiction to limit the defendant's liberty interest further . . . . When probation is imposed, the *sentencing* function is not ended . . . ." *Id.* at 558, 556 A.2d at 311 (emphasis added). Thus, the trial court's power over a defendant who has violated his probation derives almost exclusively from the sentence originally imposed, not the underlying crime charged. The underlying crime's only impact is upon the trial court's determination of an appropriate resentencing following a probation violation; such a sentence may not exceed the maximum that could have originally been imposed for the underlying crime. *See State v. Perkins*, 121 N.H. 713, 715, 435 A.2d 504, 505 (1981).

On appeal, the petitioner does not argue that incarceration could not have been imposed on the drug charge. Rather, he asserts that the inadvertent reference to and use of the assault indictment number, upon which he was sentenced to two-and-one-half to five years in the State prison, entitles him to release from sentence altogether. In light of the overwhelming, undisputed evidence that the defendant twice violated the terms of his probation on the drug charge, I cannot support the majority's granting of habeas corpus based merely on an erroneously scribbled docket number. On these facts, the defendant should not be set free. The defendant, after a violation has been found, is absolutely entitled to a sentence that derives from the appropriate underlying crime. The record shows that there was confusion on this matter. Accordingly, the case should be remanded to the trial court for resentencing with a clear understanding that the underlying offense for which the defendant faces sentencing is the drug charge. I respectfully dissent.