Hillsborough-southern judicial district
No. 2010-269

# THE STATE OF NEW HAMPSHIRE

v.

# HECTOR ORTIZ

Argued: June 9, 2011
Opinion Issued: October 27, 2011

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Dorothy E. Graham*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, Hector Ortiz, appeals his convictions by a jury on two counts of aggravated felonious sexual assault (AFSA), one of which alleged pattern AFSA, *see* RSA 632-A:2 (Supp. 2010), one count of felonious sexual assault (FSA), *see* RSA 632-A:3 (Supp. 2010), and one count of endangering the welfare of a child, *see* RSA 639:3 (2007). On appeal he argues that the Superior Court (*Groff*, J.) erred by failing to dismiss the pattern AFSA indictment and making the sentence on the pattern AFSA charge consecutive to the sentence he received for the other AFSA charge after having initially informed him that the sentences would run concurrently. He also argues that the trial court committed plain error when it instructed the jury on the wrong mental state for the FSA charge and admitted certain lay testimony. We affirm.

## I. Motion to Dismiss Pattern AFSA Charge

The defendant first argues that the trial court erred when it did not dismiss the pattern AFSA charge. At the close of the State's case, the defendant moved to dismiss this charge because the indictment failed to include the definition of a pattern, as set forth in RSA 632-A:1, I-c (2007). The State objected to the motion on the grounds that it was untimely, *see* SUPER. CT. R. 98, and that, even if timely, the indictment adequately apprised the defendant of the crime with which he was charged. The trial court denied the motion, ruling that the indictment was not defective.

The defendant contends that the pattern indictment was defective under the State Constitution because it failed to contain all of the elements of the pattern variant of AFSA. *See* N.H. CONST. pt. I, art. 15. Part I, Article 15 of the State Constitution requires that an indictment describe the offense with sufficient specificity to ensure that the defendant can prepare for trial and avoid double jeopardy. *State v. Ericson*, 159 N.H. 379, 384 (2009). To be constitutional, the indictment must contain the elements of the offense and enough facts to notify the defendant of the specific charges. *Id.* "An indictment generally is sufficient if it recites the language of the relevant statute; it need not specify the means by which the crime was accomplished or other facts that are not essential to the elements of the crime." *Id.*

The pattern variant of AFSA is set forth in RSA 632-A:2, III, which provides, in relevant part: "A person is guilty of aggravated felonious sexual assault when such person engages in a pattern of sexual assault against another person, not the actor's legal spouse, who is less than 16 years of age." Consistent with this statute, the pattern indictment alleged that on or between January 1, 1994, and May 19, 1996, the defendant committed AFSA "in that he knowingly engaged in a pattern of sexual assault with

[the victim] . . . , a juvenile female who was, at the time, less than thirteen years of age and not his legal spouse, by engaging in intercourse with her."

The defendant argues that the indictment was defective because it did not also include the statutory definition of the word "pattern." RSA 632-A:1, I-c defines a "pattern of sexual assault" as "committing more than one act under RSA 632-A:2 . . . upon the same victim over a period of 2 months or more and within a period of 5 years." The State counters that the defendant has waived or forfeited his challenge to the allegedly defective indictment because he did not timely raise the issue. *See United States v. Lnu,* 544 F.3d 361, 369 (1st Cir. 2008) ("Because the defendant failed to raise the objection prior to trial, however, he has waived his right to argue defectiveness of the indictment on appeal."). The defendant contends that the indictment's failure to allege an essential element of the charged offense deprived the trial court of subject matter jurisdiction and, therefore, he was free to raise it any time in the proceedings. *See State v. Demesmin,* 159 N.H. 595, 597 (2010); *see also Com. v. Burns,* 392 N.E.2d 865, 867 (Mass. App. Ct. 1979). *But see Com. v. Bell,* 917 N.E.2d 740, 746 n.6 (Mass. 2009) (holding that because defendant did not bring pretrial motion contesting the indictment, his argument about its sufficiency was waived).

■ We first address the defendant's assertion that the indictment, which, for the purposes of this analysis, we assume was defective, deprived the trial court of subject matter jurisdiction. The United States Supreme Court has long held that defects in an indictment do not deprive a court of jurisdiction. *United States v. Cotton,* 535 U.S. 625, 631 (2002). In *Cotton,* the Court expressly overruled its decision in *Ex parte Bain,* 121 U.S. 1 (1887), in which the court had held that a defective indictment deprived a court of jurisdiction. *Id.* The Court explained that jurisdiction refers to "the court's statutory or constitutional *power* to adjudicate the case." *Id.* at 630 (quotation omitted). "This latter concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Id.* "[D]efects in an indictment," by contrast, "do not deprive a court of its power to adjudicate a case." *Id.* Rather, "the objection that the indictment does not charge a crime . . . goes only to the merits of the case." *Id.* at 631 (quotation and brackets omitted).

Numerous state courts agree that defects in an indictment are not jurisdictional. *See Ex parte Seymour,* 946 So. 2d 536, 538-39 (Ala. 2006) (citing cases); *see also State v. Spreadbury,* 257 P.3d 392, 394 (Mont. 2011). We also agree that a defective indictment does not deprive a trial court of its power to adjudicate a case. While a defect "may be error — or even

constitutional error, . . . the defect does not divest [a trial court] of the power to try the case." *Ex parte Seymour*, 946 So. 2d at 539 (citations omitted).

▇▇▇ Having concluded any defect in the indictment did not deprive the trial court of subject matter jurisdiction, we next analyze whether the defendant challenged the indictment in a timely manner. Superior Court Rule 98(F) requires that all pretrial motions, other than discovery motions, be filed "not less than forty-five (45) calendar days prior to the scheduled jury selection date or within such other time in advance of trial as the Court may order for good cause shown or may provide for in a pretrial scheduling order." The defendant's motion, brought in the middle of trial, after the State rested its case, was untimely under this rule. *See United States v. Ramirez*, 324 F.3d 1225, 1227 (11th Cir. 2003) (per curiam) (challenges to defective indictment must be raised before trial or are deemed waived); *Com. v. Lamont L.*, 784 N.E.2d 1119, 1122 (Mass. 2003) (failing to object to defect in indictment before trial ordinarily waives any argument pertaining to defect); FED. R. CRIM. P. 12(b)(3)(B). We agree with numerous courts that the failure to raise this claim in a timely fashion does not preclude all appellate review, but rather confines our review to plain error. *See United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010); *United States v. Sinks*, 473 F.3d 1315, 1321 (10th Cir. 2007); *State v. Colon*, 893 N.E.2d 169, 171 (Ohio 2008), *overruled on other grounds by State v. Horner*, 935 N.E.2d 26 (Ohio 2010).

▇▇ The plain error rule allows us to consider errors not raised before the trial court. *State v. Russell*, 159 N.H. 475, 489 (2009). "A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court." SUP. CT. R. 16-A. "However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result." *Russell*, 159 N.H. at 489 (quotation omitted). To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted). We have looked to federal plain error analysis for guidance in applying our plain error rule. *Id.* at 489-90.

We assume, for the purposes of this analysis, that the indictment was defective, and, thus, that the trial court erred. We hold, however, that because the second criterion of the plain error rule is not met, the defendant has failed to demonstrate that the trial court committed plain error by allowing the pattern indictment to stand.

■ "For the purposes of the plain error rule, an error is plain if it was or should have been obvious in the sense that the governing law was clearly settled to the contrary." *State v. Panarello*, 157 N.H. 204, 209 (2008) (quotation omitted). "When the law is not clear at the time of trial and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error." *Id.* " 'Plain' as used in the plain error rule is synonymous with clear or, equivalently, obvious." *Id.* (quotation omitted).

■ The trial court's error in this matter could not have been "clear" or "unequivocally obvious" because this case presents an issue of first impression. *See id.* We have not been asked previously to decide whether a pattern indictment must specifically include the statutory definition of the word "pattern." Accordingly, we find no plain error here.

## II. Plain Error

We turn next to the defendant's additional arguments under our plain error rule. As previously explained, to find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Russell*, 159 N.H. at 489 (quotation omitted).

### A. Jury Instruction

The defendant argues that the trial court committed plain error by instructing the jury that the *mens rea* for the FSA charge was "knowingly," instead of "purposely." The State concedes that the trial court erred, and that the error was plain. *See State v. Pond*, 132 N.H. 472, 475 (1989) (*mens rea* for felonious sexual assault is purposely). We need not decide whether the error affected substantial rights because even if it did, we conclude that the error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *State v. Richard*, 160 N.H. 780, 789 (2010) (quotation omitted).

■ The fourth prong of the plain error test, under which we must decide whether the trial court's error seriously affected the fairness, integrity or public reputation of judicial proceedings, "is meant to be applied on a case-specific and fact-intensive basis." *Russell*, 159 N.H. at 491 (quotation omitted). In *Russell*, we ruled that the trial court erred when it failed to instruct the jury that the jury had to find unanimously that the defendant used a firearm during the armed robbery. *Id.* at 489. However, we concluded that the fourth prong of the plain error rule was not satisfied

because the evidence that the defendant used a firearm to commit the charged offenses was overwhelming and "essentially uncontroverted." *Id.* at 492.

Similarly, in *Richard*, the trial court had erred by failing to instruct the jury that the State had the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Richard*, 160 N.H. at 788-89. Because the evidence that the defendant did not act in self-defense was overwhelming and because the trial court properly instructed the jury that the State had to prove guilt beyond a reasonable doubt, we concluded that the fourth prong of the plain error test was not met. *Id.*

In the instant case, the evidence that the defendant acted purposely was overwhelming and essentially uncontroverted. "A person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element." RSA 626:2, II(a) (2007). The specific conduct of which the defendant was accused in the FSA indictment was that he knowingly had the victim touch his penis, "which can reasonably be construed as being for the purpose of sexual arousal or gratification." *See* RSA 632-A:1, IV (Supp. 2010) (sexual contact is "the intentional touching . . . of the victim's or actor's sexual or intimate parts"; the definition "includes only that aforementioned conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification").

The jury found that the defendant knowingly had the victim touch his penis and this contact "[could] be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* The victim testified that the defendant "had [her] jerk him off" with her hand, and that after she did so, "[t]he white stuff would come out, and it would just go down [her] hand." Given the overwhelming evidence that the defendant acted for the purpose of sexual arousal or gratification, or purposely, *see Pond*, 132 N.H. at 475, we conclude that the fourth prong of the plain error test has not been met.

### B. Lay Witness Opinion Testimony

The defendant next argues that the trial court committed plain error when it allowed Michael Masella, a retired police detective, and Barbara Blue, a former child protective service worker for the New Hampshire Division for Children, Youth & Families (DCYF), to give improper lay witness opinion testimony. The defendant argues that the following testimony by Detective Masella was inadmissible:

> Q. . . . [J]ust to be clear, when you say you noticed inconsistencies in [the victim's] statement —
> A. Yes.

Q. Were they major or minor inconsistencies?

A. Minor.

Q. Minor. Okay. And you worked in the youth services division for a while, right?

A. Yes.

Q. Is that common that there would be minor inconsistencies?

A. Yes.

Q. Okay. There were no major inconsistencies, though?

A. Not that I recall.

The defendant likewise argues that the following testimony by Blue constituted improper lay opinion testimony:

Q. After [the victim] said it didn't happen, you met again with [the victim's mother] and the pastor, right?

A. After the interview?

Q. Right.

A. I think so.

Q. And at that point [the victim's mother] remained adamant that she did not believe her daughter?

A. Correct.

Q. And at that point, you said to her it's not uncommon for children to recant?

A. Right.

Q. Okay. Especially when their mother does not believe them?

A. Right.

Q. And let's them know that she doesn't believe them?

A. Oh, yes. Right.

■■■ We assume, without deciding, that it was error to admit the challenged testimony and that the error was plain. *See State v. Gonzalez*, 150 N.H. 74, 77 (2003). We turn, therefore, to the third prong of the plain error test — whether the error affected the defendant's substantial rights. To satisfy this prong, the defendant must show that the error affected the outcome of the proceeding. *State v. Cassavaugh*, 161 N.H. 90, 101 (2010).

Here, "the evidence most damaging to the defendant was the victim's description in vivid detail, of the various sexual acts." *Gonzalez*, 150 N.H. at 79 (quotation omitted). The victim, who was twenty-three years old by the time of trial, was able to remember the details of assaults that occurred thirteen years earlier. *See id.* She testified that on at least five occasions,

the defendant "put his penis in [her] vagina." The assaults took place in the bedroom the defendant shared with the victim's mother. The victim testified that he would ask her to clean his room and then he would enter the room and lock the door. The defendant would then assault the victim on his bed. The victim testified that the defendant also made the victim touch his penis until he ejaculated and his ejaculate ran down her hand. She also testified that the defendant once asked the victim to "suck his dick like a lollipop." In addition to assaulting the victim in the home she shared with the defendant and her mother, the victim testified that the defendant once took her to an empty apartment "laid [her] on the floor . . . [and] had sex with [her]." The victim recalled that the defendant's ejaculate "fell on the floor." The victim testified that she told her mother about the assaults shortly after the last assault occurred. Thereafter, she was interviewed by the police, sent to counseling and taken to a physician for a physical exam.

The pediatrician who examined the victim testified that he examined her "to evaluate her for an allegation of sexual abuse." The victim "was about ten years old" at the time. The pediatrician asked the victim if the defendant "had put his penis inside her, she said yes." He asked her "if this had happened before, and she shyly said yes." His examination revealed that the victim's genitalia showed a large area of "generalized redness of the labia on the outside" and that her hymen was not intact. He testified: "Typically, a prepubertal girl who has not had sex would have an intact hymen unless there had been some sort of trauma or injury to the hymen." The pediatrician also testified that "there were signs of previous irritation and trauma to the hymen." The pediatrician testified that the redness of the victim's labia was "not normal."

■ Given the victim's detailed accounts of the assault and the physical evidence demonstrating that she had been assaulted, we conclude that the opinions offered by Masella and Blue did not affect the outcome of the proceeding. Cf. id. at 79-80 (reaching similar conclusion regarding inadmissible lay witness opinion testimony under harmless error analysis). We hold, therefore, that the defendant has failed to satisfy the third prong of the plain error test.

## III. Pattern AFSA Charge Sentence

Finally, the defendant argues that the trial court impermissibly changed the sentence on the pattern AFSA charge so that it ran consecutive to, instead of concurrent with, the sentence on the other AFSA charge. At the sentencing hearing, the prosecution recommended that the defendant be sentenced to "27 to 85 years in state prison." The prosecution asked "for each conviction a consecutive sentence." The prosecution reasoned that

because the victim "lived with consecutive assaults on her body" and the defendant "committed multiple . . . consecutive acts, not all at once[,] [h]e should receive consecutive sentences." By contrast, the defense recommended "five years, stand committed . . . , five years of parole, a lifetime registration as a sex offender, and a lifetime of suspended prison time."

The trial court sentenced the defendant as follows. On the AFSA charge, the defendant was sentenced to no more than twenty and no less than ten years in prison. He received the same sentence on the pattern AFSA charge, and the sentencing judge stated this sentence "will run concurrent with the sentence imposed on [the AFSA charge]." On the FSA charge, he was sentenced to no more than ten years and no less than five years in prison, and this sentence was to be consecutive to the sentences on the AFSA and pattern AFSA charges. Finally, on the endangering the welfare of a minor charge, the court sentenced the defendant to no more than ten years and no less than five years in prison; this sentence was to be concurrent to the sentence on the FSA charge. The court recessed the hearing at 10:17 a.m.

Nine minutes later, at 10:26 a.m., the court reconvened the hearing, explaining:

> Mr. Ortiz, I apologize for this, but as I walked off the bench I realized that I had read this sentence wrong. . . . The sentence that I read to you for [the AFSA pattern charge], I told you that was a concurrent sentence. That was incorrect. That sentence was, sentenced to New Hampshire State Prison for not more than 20 years, no less than 10 years. . . . That sentence is stand committed, and that sentence will run consecutive to the sentence imposed [on the AFSA charge]. The other terms of the sentence are the same, and the terms of the other two sentences are the same as well, which means that the sentence I'm imposing on you is a sentence in total of 25 to 50 years in New Hampshire State Prison. I apologize for that, for error on my part.

A few days later, the defendant filed a motion requesting that the court impose the sentence on the pattern AFSA charge that it originally pronounced, ten to twenty years in state prison, to run concurrently with the sentence on the AFSA charge. In denying the motion, the trial court explained:

> The Court believed that the State's recommendation was too severe, and the defendant's recommendation was too lenient. . . . The Court ultimately decided to impose stand committed sentences totaling 25 to 50 years in the New Hampshire State Prison. However, when the Court attempted to modify the State's recom-

> mendation to reflect this sentence, the Court erred. It made the sentence [on the pattern AFSA charge] run concurrent with the sentence on [the AFSA charge], rather than consecutive, as it had intended. The Court did not immediately realize its error . . . . After remanding the defendant into the State's custody and leaving the bench, the Court immediately became concerned that the sentence imposed was not the sentence intended. The Court then immediately reviewed the sentencing sheets and saw the concurrent sentences [on the pattern AFSA and AFSA charges], confirming the error. Court officers were immediately directed to return the parties to the courtroom. The Court explained that an error had been made and imposed the intended consecutive sentences. Only nine (9) minutes elapsed between the end of the original sentencing hearing and the Court's return to the bench for resentencing.

The trial court ruled that its error was clerical, which it retained the authority to correct, and ruled that in doing so, it did not violate the defendant's due process rights. *See State v. Stern*, 150 N.H. 705, 713-14 (2004).

The defendant argues that by changing the sentence on the pattern AFSA charge so that it ran consecutively to the sentence on the other AFSA charge, the trial court violated his state and federal constitutional rights to due process. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. X, IV. Because the issue before us is one of constitutional law, we review it *de novo. State v. Fletcher*, 158 N.H. 207, 209 (2009). Although the defendant cites the Federal Constitution, he relies only upon state cases construing our State Constitution and does not separately develop any argument based upon the Federal Constitution. We limit our analysis accordingly. To the extent that we rely upon federal authority, we do so for guidance only. *State v. Ball*, 124 N.H. 231, 233 (1983).

Due process requires a sentencing court to communicate clearly to the defendant the exact nature of the sentence as well as the extent to which the court retains discretion to modify it or impose it at a later date. *Fletcher*, 158 N.H. at 209-10. Due process thus imposes an outer limit upon the court's ability to correct a sentence after pronouncing it. *Stern*, 150 N.H. at 713-14.

To decide whether a due process violation has occurred, we engage in a two-part inquiry. *See Fletcher*, 158 N.H. at 210. First, we must determine if the trial court had authority to amend the defendant's sentence. *State v. Van Winkle*, 160 N.H. 337, 340 (2010). This requires

ascertaining the type of error that occurred. *Id.* If we decide that the trial court had the authority to amend the sentence, we then examine whether the amended sentence offends due process. *See Fletcher,* 158 N.H. at 210. In *Stern,* we held that the following factors were instructive: (1) the lapse of time between the mistake and the attempted increase in sentence; (2) whether the defendant contributed to the mistake; (3) the reasonableness of the defendant's intervening expectations; (4) the prejudice to the defendant from the change; and (5) the diligence of the State in seeking the change. *Stern,* 150 N.H. at 714; *see DeWitt v. Ventetoulo,* 6 F.3d 32, 35 (1st Cir. 1993).

In this case, the defendant focuses solely upon the first part of our due process analysis — whether the trial court had the authority to amend the sentence. We limit our analysis accordingly.

■ We have recognized two circumstances in which the sentencing court retains jurisdiction over a defendant's sentence, thereby allowing for subsequent amendment. *Van Winkle,* 160 N.H. at 340-41. First, jurisdiction is retained where there is a clerical error. *Id.* at 341; *see, e.g., Stern,* 150 N.H. at 714 (court may correct sentencing form that mistakenly stated "all but three months" instead of "three months" of the sentence would be deferred); *Doyle v. O'Dowd,* 85 N.H. 402, 402-03 (1932) (court may correct sentence when court inadvertently sentenced defendant to pay costs *or* be imprisoned, instead of to pay costs *and* be imprisoned). Second, jurisdiction is retained where an initial sentence is illegal and void. *Fletcher,* 158 N.H. at 210; *see State v. Richard,* 99 N.H. 126, 129 (1954) (trial court retained jurisdiction to correct sentence when court imposed sentence that was in excess of that allowed by law). In all other circumstances, unless the terms of a sentence at the time it is imposed specifically allow augmentation at a later date, the trial court may not subsequently increase a defendant's penalty. *See Van Winkle,* 160 N.H. at 340.

■ The defendant argues that the error in this case was not clerical. We disagree. The record reveals that the trial judge merely misread his sentencing sheets. At the sentencing hearing, he explained that he just "read [the] sentence wrong." In the trial court's order, the court further explained that the court modified the sentencing sheets provided by the prosecution, but when the sheets were read at the hearing, the court "erroneously provided for a concurrent sentence contrary to its intention. This was simply an editing mistake on already existing sentencing forms."

This type of error is akin to the clerical or scrivener's error in *Stern.* In *Stern,* "[t]he court read from a sentencing form that mistakenly stated that 'all but three months' of the defendant's twelve-month sentence was to be deferred, instead of 'three months' to be deferred." *Stern,* 150 N.H. at 714.

The court corrected its error a mere two hours after the sentencing hearing ended to conform the record to reflect its original intent. *Id.* Similarly here, the trial court misread the sentencing sheets, imposing a concurrent, instead of a consecutive, sentence on the defendant for the pattern AFSA charge. As in *Stern,* when the trial court corrected the error nine minutes later, it did so to conform the record to reflect its original intent. *See id.*

The defendant contends that because the original sentence was clear, unambiguous and legally valid, the court lacked any authority to correct it, even if the sentence reflected a clerical error. The defendant likewise implies that because the original sentence was clear and unambiguous, we may not examine the record to determine whether the sentence reflected the trial court's intent. To support his argument, the defendant relies upon *Fletcher* and *Van Winkle.* We take this opportunity to clarify our prior case law on this issue.

In *Fletcher,* we stated the following: "[W]here the original sentence is clear as to the intent and is legal, the sentencing court does not have the authority to increase the sentence. . . . Accordingly, we look to the language of the sentencing order to determine if the intent is clear, and thus if the trial court retained jurisdiction. Where there is no ambiguity, the intent expressed in the sentencing order must be presumed to reflect the original intent of the sentencing judge." *Fletcher,* 158 N.H. at 211-12 (quotation and citations omitted). We repeated this language nearly verbatim in *Van Winkle,* 160 N.H. at 341, 342.

Taken out of context, this language appears to preclude a trial court from amending a clear and unambiguous original sentencing order, even if the order reflects a clerical error. Such an interpretation runs counter to our clerical error doctrine. Regardless of whether a sentencing order is clear and unambiguous, a sentencing judge *always* has jurisdiction to correct a clerical error. The judge does not have to reserve this jurisdiction specifically. It is inherent in the court's sentencing authority. *See Doyle,* 85 N.H. at 402 (court has inherent authority to correct error inadvertently made in its record of sentence). Thus, here, even though the original sentence was clear and unambiguous on its face, the trial court had inherent authority to amend it because it was the result of a clerical error.

The language in *Fletcher* and *Van Winkle* also appears to indicate that in determining whether a clerical error has occurred, we look only to the language of the sentencing order itself; if it is clear and unambiguous on its face, we will not look beyond it to determine whether a clerical error has occurred. This interpretation is also contrary to our clerical error doctrine. As a practical matter, a sentencing order that reflects a clerical error may often be clear and unambiguous on its face. There may be no other way to

determine whether the sentence imposed reflects a clerical error except to look beyond the sentencing order itself. A close look at our case law reveals that we routinely look beyond the language of the original sentencing order to determine whether a clerical error has occurred.

The language in *Fletcher,* repeated in *Van Winkle,* first appeared in *Webster v. Powell, Commissioner,* 138 N.H. 36 (1993). The petitioner in that case was originally sentenced in 1988 for sale of cocaine and second-degree assault. *Webster,* 138 N.H. at 36. For the drug charge, he was sentenced to twelve months of imprisonment followed by two years of probation. *Id.* For the assault charge, he was sentenced to one to three years in prison, consecutive to the drug charge sentence, suspended for a period of three years. *Id.*

In 1990, before the expiration of the three-year suspension period, the petitioner violated probation and he and the State agreed that, as a result, he would serve twelve months in prison on the assault charge and "serve an additional 2 years on probation." *Id.* at 37 (quotation omitted). The agreement did not specify the charge to which the additional two years of probation applied. *Id.*

In 1992, after the three-year suspension period expired, following additional probation violations, the defendant was sentenced to two and one-half years to five years of imprisonment; he received 365 days of pretrial confinement because he had already served one year in prison on the 1990 sentence. *Id.* The petitioner then filed a petition for writ of habeas corpus challenging the legality of his 1992 sentence. *Id.* The trial court agreed that it would have been unlawful to sentence the defendant in 1992 on the assault charge, because, by that time, the suspension period had expired, but that the 1992 sentence was actually on the drug charge, even though the sentence itself referred to the assault charge. *Id.* at 37-38. The trial court so concluded based upon the 1990 sentencing agreement and the transcript of the 1992 hearing. *Id.* at 37-38.

After examining at length the 1990 agreement between the petitioner and the State, including how the handwritten indictment numbers were written, as well as the transcript of the 1992 hearing, we decided that reference to the assault charge in the 1992 sentence was not the result of a scrivener's error. *Id.* at 38. Neither the 1990 agreement nor the 1992 hearing "betray[ed] . . . ambiguity with respect to the intentions of the parties and the court." *Id.* at 39. We then explained: "Defendants in criminal cases have the right to expect that sentencing orders will clearly communicate the exact nature of their sentences. Where there is no ambiguity, the intent expressed in the sentencing order must be presumed to reflect the

intent of the sentencing judge." *Id.* (citation omitted). In context, therefore, the lack of ambiguity to which we referred in *Webster* was the lack of ambiguity in the *record*.

■ Consistent with *Webster*, when a clerical error is at issue, we have looked beyond the language of a sentencing order to determine whether it reflects the trial court's intent, even if the order itself is clear and unambiguous. In *Fletcher*, for instance, even though we stated that the originally issued sentence was "clear" and "valid," we also looked to whether the trial court stated that the sentence issued did not reflect its intent. *Fletcher*, 158 N.H. at 212-13. The sentence issued made one sentence consecutive to the other three sentences. *Id.* at 212. After the defendant was committed on this one sentence, the trial court amended one of the other sentences so that it would be served consecutively instead of concurrently. *Id.* at 209. We noted that there was nothing in the record to indicate that this was the trial court's original intent: "At no point . . . did the trial court state that its original intent was that this . . . sentence be served consecutively. Nor is there anything in the record that indicates that this was the trial court's intent." *Id.* at 212. Accordingly, we concluded that the original sentence was not the result of scrivener's error. *Id.*

Similarly, in *Van Winkle*, we looked at the sentencing hearing transcript to determine whether the sentence imposed reflected the trial court's intent, explaining that "the sentencing hearing transcript does not indicate that the trial court intended to impose one sentence but mistakenly wrote another." *Van Winkle*, 160 N.H. at 341.

The sentence originally imposed in *Stern* was clear and unambiguous. The court originally sentenced the defendant to "twelve months imprisonment, stand committed, with all but three months of the sentence deferred for three years." *Stern*, 150 N.H. at 712 (quotation, brackets and ellipsis omitted). The record revealed, however, that this sentence was not the sentence the court intended to impose. *Id.* at 712-13. As the trial court explained: "By scrivener's error, the Court wrote 'all but 3 months deferred' when it intended to write '3 months deferred' on the sentencing order. As a result of the scrivener's error, the Court also orally read the sentencing form incorrectly." *Id.* at 712 (quotation omitted).

In the instant case, therefore, even though the original sentence was clear and unambiguous on its face, because a clerical error is alleged, we look beyond the sentencing order's language to discern whether such an error occurred.

*Affirmed.*

DUGGAN, HICKS and CONBOY, JJ., concurred.