# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2019-0309, <u>State of New Hampshire v. Brenda A. Emery</u>, the court on May 14, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Brenda A. Emery, appeals her conviction, following a jury trial in Superior Court (<u>Bornstein</u>, J.), on two misdemeanor counts of disorderly conduct. <u>See</u> RSA 644:2 (2016). She argues that the trial court erred by not dismissing the misdemeanor charges because: (1) the complaints did not sufficiently allege misdemeanor-level offenses; and (2) the evidence was insufficient to prove that she engaged in misdemeanor-level offenses.

We first address whether the trial court erred by not dismissing the misdemeanor charges because the complaints failed to allege misdemeanor-level offenses. The complaints in this case alleged that the defendant engaged in misdemeanor-level disorderly conduct by: (1) "knowingly engag[ing] in fighting, or violent, tumultuous, or threatening behavior, in a public place by throwing her beer on another patron at [a bar], and attempting to engage in further physical confrontation with said patron after being told to leave by . . . [the] bartender," RSA 644:2, II(a); and (2) "knowingly refus[ing] to comply with [a police officer's] . . . order to get back into her vehicle and stay away from the [bar] . . . , by continuing to move towards the [bar] and resisting attempts by [the officer] to get her back into her vehicle," RSA 644:2, II(e). Disorderly conduct is a misdemeanor only "if the offense continues after a request by any person to desist"; otherwise, it is a violation. RSA 644:2, VI. The defendant contends that neither complaint specifically alleged that the charged disorderly conduct continued after she was requested to desist. Accordingly, she argues that the trial court erred by "failing to reduce the charges to violation-level offenses and . . . either deciding the charges itself or submitting the charges to the jury without the continue-after-request element.

The defendant raised this argument in the trial court as part of a motion to dismiss at the close of the State's case. We have held that, to timely challenge the sufficiency of a charging document, the defendant must raise the challenge in a <u>pretrial</u> motion. <u>State v. Pinault</u>, 168 N.H. 28, 33 (2015); <u>State v. Ortiz</u>, 162 N.H. 585, 590 (2011); <u>see</u> <u>also</u> <u>N.H. R. Crim. P.</u> 15(b)(1) (establishing deadline for pretrial motions other than discovery-related motions in superior court criminal cases). Because the defendant first challenged the sufficiency of the complaints during trial, the State argues that we are limited to reviewing this issue for plain error. <u>Pinault</u>, 168 N.H. at 33; <u>Ortiz</u>, 162 N.H.

at 590. The defendant counters she did not challenge the disorderly conduct complaints as defective, but argued only that they alleged violation-level offenses and, thus, that her motion to dismiss "related to trial procedure – who should decide the disorderly [conduct] charges and how the jury should be instructed on those charges." Under these circumstances, the defendant argues that Pinault and Ortiz do not apply.

Notwithstanding the defendant's contention, both at trial and on appeal, that she was not claiming that the complaints were defective, she accurately characterizes the motion as seeking, "[i]n essence, . . . to dismiss the greater offense while acknowledging that the complaints sufficiently alleged the lesser-included offense." Thus, in substance, the defendant sought to dismiss the misdemeanor-level charges on the basis that the complaints failed to allege a necessary element of misdemeanor disorderly conduct. Under these circumstances, we conclude that the motion was untimely, and that our review of this issue is limited to whether the trial court engaged in plain error. See Ortiz, 162 N.H. at 590 (holding that, because defendant first challenged indictment's failure to allege a necessary element in a motion to dismiss at the close of the State's case, review of issue on appeal was limited to plain error).

For purposes of the plain error rule, an error is not "plain" if it raises an issue of first impression. See id. at 591. Here, the defendant argues that to charge her with misdemeanor-level disorderly conduct, the statute obligated the State to specifically allege that she continued her criminal behavior – attempting to engage in physical confrontation with the bar patron and refusing to obey the officer's order to get back into her car – after she was told to stop engaging in such behavior. Because the complaints did not specifically allege that the defendant was told to stop attempting to engage in a physical confrontation with the patron or to stop disobeying the officer's order to get into her vehicle, but alleged only that she was told to leave the premises in the first complaint and resisted the officer's attempts to get her into the vehicle in the second complaint, the defendant argues that the complaints did not sufficiently charge misdemeanor conduct. We agree with the State that, because these arguments turn on the meaning of the statutory phrase, "request by any person to desist," RSA 644:2, VI, and because we have not yet interpreted this provision, the alleged errors were not "plain." Ortiz, 162 N.H. at 591.

We next address whether the evidence was sufficient to establish misdemeanor-level convictions. To prevail on her challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found her guilty beyond a reasonable doubt. State v. Leith, 172 N.H. 1, 11 (2019). We consider each item of evidence within the context of all of the evidence, and not in isolation. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). Whether the evidence was sufficient to support the defendant's convictions raises a claim of legal error, which we review de novo. Id.

The defendant argues that, with respect to the first complaint, there was no evidence that she engaged in fighting, or violent, tumultuous, or threatening behavior toward the patron after the bartender told her to leave. Thus, she argues that the evidence was insufficient to establish that she continued to engage in the charged disorderly conduct after being told to stop so as to be criminally liable for a misdemeanor-level offense for purposes of RSA 644:2, VI.

The bartender testified that, after an altercation between the patron and the defendant had occurred, and prior to telling the defendant to leave, she observed the defendant in an alley outside the bar "hastily walking towards [the patron], . . . almost like a charge at someone," "getting in [the patron's] face," "yelling at" the patron, and "being the aggressor." The patron, by contrast, "looked like he wanted nothing to do with the situation that was going on," "like he was trying to get away from the situation," and like he wanted the bartender to intervene. The bartender told the defendant that she needed to leave. However, the defendant did not leave, and instead "continued to yell at" the patron and to "show all sorts of aggressive behavior." The bartender then "picked [the defendant] up like a baby, and . . . walked her about 15 feet down the alley and put her down," and again told her to leave.

Two witnesses testified consistently with the bartender's account. One witness testified that, after he had followed the bartender outside, he observed the bartender telling the defendant to leave and that she would not be allowed back into the bar, but that the defendant was "continuing to try and come back and get at [the patron] again." The witness then observed the bartender "physically, almost pick[ the defendant] up and carr[y] her to Main Street." Likewise, a second witness observed the bartender "trying to keep [the defendant and the patron] separated, telling them to leave," saw that the defendant "was still arguing with" the patron, and saw the bartender "pick[ the defendant] up and carr[y] her to the front of the building, where the sidewalk is, and [tell the defendant] to leave, go home."

Viewing this evidence in the light most favorable to the State, and drawing all reasonable inferences from it in the State's favor, we conclude that a reasonable jury could have found, beyond a reasonable doubt, that the defendant continued to engage in fighting, or violent, tumultuous, or threatening behavior after having been asked to desist from such conduct.

With respect to the second complaint, the defendant argues that, because there was no evidence that the police officer "gave [the defendant] any orders or made any requests of [the defendant] after his initial order that she get back in her car," the evidence was insufficient to establish that she continued to engage in the charged disorderly conduct – refusing to obey the officer's initial command to return to her car – after being told to stop her disorderly conduct so as to be liable for misdemeanor disorderly conduct under RSA 644:2, VI. The defendant claims that the officer's use of physical force

3

was not justified under RSA 627:5 (2016), and thus, she contends that the officer's use of force cannot reasonably infer a request to desist from disobeying the officer's initial command. We disagree.

The officer testified that he observed the defendant, in an out-of-control manner, get out of her car and attempt to go past him to where the bartender was standing. According to the officer, he grabbed the defendant by the arm and told her to get back into her car. However, the defendant ignored the officer's command, "kept screaming obscenities at" the bartender, and "was just trying to get past [the officer] to get up onto the sidewalk" where the bartender was standing. The officer and the defendant's companion, who had come over to assist the officer and talk to the defendant, "stuffed" the defendant back into her car, and the officer let go of the defendant's arm only when she was seated back in the car. Throughout the entire incident, the defendant was "yelling, screaming," and causing "chaos."

Regardless of whether the officer's restraint complied with RSA 627:5, we conclude that a reasonable jury could have found, beyond a reasonable doubt, that the actions of both the officer and the defendant's companion in having to physically restrain the defendant and "stuff" her back into the car amounted to a request that she desist from her continued disobedience of the officer's order.

<u>Affirmed</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**