# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 15, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000614-MR

BRENDA HARDIN                           APPELLANT

ON APPEAL FROM MUHLENBERG CIRCUIT COURT
V.          HONORABLE BRIAN WIGGINS, JUDGE
NO. 14-CR-00156

COMMONWEALTH OF KENTUCKY                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Appellant, Brenda Hardin, and her husband, Ronnie Hardin were married in 1971. They have one son, Brent, and two grandsons. In January of 2012, Ronnie separated from Brenda. Her mental and physical health deteriorated thereafter. She suffered from depression and attempted suicide in 2013. Appellant and Ronnie divorced on July 30, 2013. Appellant's mental health continued to decline.

After the divorce, Ronnie maintained a golf shop in a detached building on the property where the two once lived. Ronnie continued to use the shop for golf lessons and to work on golf clubs. Sometime thereafter, Ronnie became engaged to Betty Rule. Brenda became aware of the planned union shortly

before the wedding date, resulting in an obsession with the prospect of Ronnie's remarriage.

Brent cautioned his father to avoid returning to Brenda's home due to her volatile state. On July 7, 2014, however, Ronnie returned to his former marital residence to use the golf shop. That evening, Brenda killed Ronnie with one single shot to his upper torso that was fired from a .357 Ruger revolver. She then ingested copious amounts of prescription medication in an attempt to commit suicide. However, Appellant managed to drive herself to her sister's house, who promptly called 911. While at her sister's residence, Appellant admitted to killing Ronnie. Thereafter, Appellant spent several days in the local intensive care unit. During that time period, officers searched Appellant's home, wherein they discovered several items of evidence including the murder weapon. As a result, Appellant was indicted for murder and tampering with physical evidence. When she recovered, she was transported to the Muhlenberg County jail.

Appellant was tried and convicted of murder by a Muhlenberg Circuit Court jury. The jury recommended a sentence of life imprisonment, which the trial court imposed. Appellant now appeals her judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Six issues are raised and addressed as follows.

## Fifth Amendment Claim

Appellant argues that the trial court erred in allowing the recorded statement taken by Detective Brandon McPherson to be played to the jury. The

statement was recorded while Appellant was in the hospital recovering from her attempted suicide. Appellant contends that she was not free to leave her hospital bed and, therefore, the recorded exchange constitutes a custodial interrogation requiring *Miranda* warnings. Detective McPherson did not provide Appellant with her Miranda rights.

Our standard of review here is twofold. First, the trial court's findings of fact are conclusive if they are supported by substantial evidence; and second, the trial court's legal conclusions are reviewed de novo. *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky. 2008); RCr 9.78.

After reviewing the fourteen-minute recording and the in-chambers discussion, the relevant facts are as follows: 1) Detective McPherson was posted as a guard outside of Appellant's hospital room; 2) Appellant initiated the conversation and subsequently informed the detective that she knew he was there because he was on "suicide watch" of her; 3) Appellant appeared very coherent and descriptive during the discussion; 4) although prompted by Detective McPherson to discuss the events that occurred on the night of the murder, Appellant never mentioned Ronnie or the murder; 5) Appellant did not know she was being recorded; and 6) when questioned about the incident by the judge, Detective McPherson informed the judge that Appellant was not free to leave the hospital room. However, she was not physically restrained.

Lastly, the Uniform Citation stated that Appellant had been arrested at the hospital on July 8, 2014. The hospital conversation at issue here occurred on July 11, 2014. Det. McPherson testified that he was unaware that

3

Appellant had been charged at that time. However, it appears from the record that the citation had not been served on Appellant and that she had not actually been arrested until after her conversation with McPherson. Prior thereto, Appellant had been unconscious.

The trial court reviewed the entire recording and determined that the officer's subjective belief as to custody was irrelevant. The court ultimately ruled that because Appellant stated that she believed she was on suicide watch, she was there "not because she was in custody, so to speak, but because they were watching out and concerned about her well-being." The court also noted that its decision to admit the recording was a "close call."

Our unpublished decision of *Griggs v. Commonwealth*, is instructive. 2008 WL 1851080, at *5, No. 2006–SC–000846–MR, (Ky. April 24, 2008). Therein, we observed:

> Other courts have held, and we agree, that the restraint giving rise to "custody" must be restraint instigated by the police, and for that reason the majority rule is that confinement to a hospital bed does not, by itself, amount to "custody" for *Miranda* purposes. *Wofford v. State,* 330 Ark. 8, 952 S.W.2d 646 (Ark. 1997); *DeJesus v. State,* 655 A.2d 1180 (Del. 1995); *State v. Tucker,* 131 N.H. 526, 557 A.2d 270 (N.H. 1989) (collecting cases); *People v. Milhollin,* 751 P.2d 43 (Colo. 1988). Rather, hospital questioning, like questioning elsewhere, is not custodial unless the circumstances would lead a reasonable person to believe that were he capable of leaving the hospital, the police would not allow him to do so. *Cf. Commonwealth v. Lucas, supra.*
>
> Although in this case the police apparently monitored Griggs while he was in the hospital staff's care, we cannot say that the trial court clearly erred when it found that at the time of his questioning he was not yet in custody. Prior to that time Griggs had not been confronted by a threatening or demanding police presence, and the questioning itself was not prefaced by any

4

indication that Griggs was not free to leave or to ask the officers to do so. The trial court did not abuse its discretion, therefore, when it denied Griggs's belated motion for a mistrial. *Id.* at *6.

Similar to *Griggs*, Appellant "had not been confronted by a threatening or demanding police presence, and the questioning itself was not prefaced by any indication that [Appellant] was not free to leave or to ask the officers to do so." *Id.*

However, even if we presume that Appellant was in custody and, thus, entitled to the protection of *Miranda* rights, any error here may still be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24 (1967). *See also, Moore v. Commonwealth,* 2015 WL 4972249, at *5, 2014–SC–000023–MR (Ky. Aug. 20, 2015) (citing the majority rule provided in *Griggs* and holding that any possible error was harmless beyond reasonable doubt); and *Scales v. State,* 219 N.W.2d 286, 292 (Wis. 1974).

Nothing in the recording could have prejudicially impacted the jury's verdict because Appellant did not inculpate herself in the murder during her conversation with Detective McPherson. Rather, the recorded dialogue between the two primarily consisted of a discussion about divorce and Appellant's attempted suicide. This evidence was cumulative of additional evidence presented at trial. And although Appellant conceded that she and Ronnie were arguing at the golf shop on the night of the murder, she specifically stated that she went back to the house after they finished arguing. Appellant also informed the detective that she was not mad at Ronnie about the divorce and that they had "moved on." Even if the recording implicated Appellant in her ex-

5

husband's murder, any error was harmless beyond a reasonable doubt. As previously stated, the murder weapon was found in Appellant's home and Appellant's sister testified that Appellant admitted to killing Ronnie shortly after the murder occurred.

## Pill Bottle Evidence

For her next argument, Appellant contends that the trial court erred by not admitting the pill bottles she used to attempt suicide into evidence. More specifically, Appellant alleges that because she maintained an extreme emotional disturbance defense at trial, she should have been permitted to introduce physical evidence of the pill bottles. The Commonwealth objected and claimed the pill bottles were a "biohazard" and that "we can't give the jury a bottle of controlled substances." The trial court sustained the Commonwealth's objection. Appellant reiterated her argument to the court when the jury, while in deliberation, sent out a note requesting to see the pill bottles. The court declined the request.

The pill bottles at issue here were discussed by Detective Lonnie Cavanaugh. He testified that he recovered the bottles from Appellant's residence. The bottles were marked but not admitted into evidence. Appellant does not detail her legal foundation for error nor cite any rule requiring otherwise admissible evidence be submitted to the jury. However, RCr 9.72 provides that "[u]pon retiring for deliberation the jury may take all papers and other things received as evidence in the case." Typically, alleged errors under this rule involve improper evidence that was admitted to the jury and are

6

reviewed for an abuse of discretion. Here, we seem to have the inverse scenario. It appears that the Commonwealth and the trial court were concerned that the jury would be sequestered with unemptied pill bottles which were never actually admitted into evidence. We cannot say that the trial court abused its discretion by refusing to submit narcotics to the jury room.

Moreover, Appellant was permitted to introduce testimony concerning the pill bottles and their connection to Appellant's attempted suicide. The court also responded to the jury's request to see the bottles in a handwritten note stating: '[t]he actual pill bottles have not been admitted as evidence. True and accurate photos of the pill bottles have been admitted into the record and are in your possession at this time." Therefore, any error that occurred here was harmless. RCr 9.24.

## **Letters**

Detective Cavanaugh was the lead detective in this case. He testified at trial that he obtained several letters authored by Appellant, several of which were suicide notes to various family members and to Ronnie's fiancé. Appellant objected, claiming that these letters were not properly authenticated. The court denied the objection. After Detective Cavanaugh read the anonymous letters to the jury, they were admitted into evidence.

KRE 901 provides various methods for authentication. Appellant argues that the Commonwealth did not comply with these relevant provisions. However, three of the suicide letters introduced into evidence were signed, "Brenda." Appellant only takes specific issue with two anonymous letters that

7

appear to have been written by an allegedly anonymous third person. More precisely, these letters were written about Appellant and Ronnie from the perspective of an anonymous third party. They were not suicide letters; rather, they were threatening letters addressed to Ronnie.

Appellant fails to advance her argument here beyond a facial assertion of error. She provides scant authority in support of her argument and, critically, she fails to demonstrate prejudice. Several of the letters introduced into evidence were not objected to, were signed by Brenda, and contained statements implicating Appellant's desire to harm herself and Ronnie. Appellant also introduced additional unsigned letters addressed to Ronnie. Lastly, the two letters at issue here were provided to the Kentucky State Police by Appellant's son, Brent, and Ronnie's step-father, Clyde Brown. Accordingly, if there was error here, it was harmless.

### Jury Instruction

Appellant complains that the court erred in issuing a guilty but mentally ill jury instruction ("GBMI"). The Commonwealth requested that instruction and defense counsel objected. The court agreed with the Commonwealth and authorized the instruction. However, the Commonwealth stated during closing argument that "[t]here is no evidence that [Appellant] was ever diagnosed with a mental illness." Appellant was not convicted under a GBMI instruction. Therefore, Appellant has failed to demonstrate prejudice. There is no error here, certainly no error requiring reversal.

## Photographs

Appellant takes issue with photographs introduced by the Commonwealth during the guilt phase of trial. Appellant claims that these photos were not provided during discovery. However, Appellant fails to advance her argument here beyond a facial assertion of error. She provides boilerplate authority in support of her argument and fails to demonstrate prejudice. Appellant also fails to indicate the specific photos with which she takes issue or to even describe their contents. All of the exhibits admitted by the Commonwealth during the guilt phase are pictures of Ronnie's friends and family. These are typical exhibits in sentencing proceedings and certainly not inflammatory. There was no reversible error here.

## Change of Venue

For her final argument, Appellant contends that she could not have received a fair trial in Muhlenberg County and that she was entitled to a change of venue. This issue is properly preserved and we review for an abuse of discretion. *Foley v. Commonwealth*, 942 S.W.2d 876, 881 (Ky. 1996)

"In order for a change of venue to be granted there must be a showing that: 1) there has been prejudicial news coverage; 2) it occurred prior to trial; and 3) the effect of such news coverage is reasonably likely to prevent a fair trial." *Id.* (citing *Wilson v. Commonwealth*, 836 S.W.2d 872 (Ky. 1992)). Appellant fails to cite to any portion of the record containing what specific jurors heard about the case prior to trial. Instead, Appellant relies primarily on a poll alleging that 53% of respondents were aware that Appellant was accused

9

of murdering Ronnie Hardin. Yet, Appellant fails to cite to where that alleged poll is contained in the record. It also appears that Appellant failed to comply with KRS 452.220 when raising her change of venue motion. Nevertheless, the trial court held a hearing on the issue. A video of that hearing is not in the record. *See Chestnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky. 2008) ("It is incumbent upon Appellant to present the Court with a complete record for review."). However, the record indicates that the trial court considered witness testimony, statistical data, and other relevant evidence in denying Appellant's motion. There was no abuse of discretion here.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Muhlenberg Circuit Court.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Matthew James Baker


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Matthew Robert Krygiel
Assistant Attorney General